Good morning. Good morning. Good morning, Your Honors. Eric Slepian on behalf of Cynthia Howard. I'm here to talk about a denial of a Social Security disability claim that was filed on behalf of Ms. Howard. I'm asking this Court to review the decision of the Administrative Law Judge, which is a decision that this Court reviews de novo. In this claim, Ms. Howard established that she suffers from a number of severe impairments, and that issue is not in dispute. And those impairments are a mood disorder, a panic disorder, bilateral carpal tunnel syndrome, headaches, as well as fibromyalgia. In determining the claim, the Social Security judge is supposed to go through a number of steps. The first step I'd like to talk to the Court about, and the area I'm going to focus on initially, is the failure to evaluate credibility. There's no question that Ms. Howard testified to psychological issues as well as headache pain that would interfere with her ability to sustain a competitive work pace. And the commissioner's vocational expert stated that if we were to accept those restrictions and limitations, Ms. Howard would be unable to sustain work. There is no evidence of exaggeration or malingering in this case, and that triggers the clear and convincing rule. And what that states is in order to reject Ms. Howard's testimony or her complaints of pain, the ALJ must cite clear and convincing reasons supported by the record as a whole. In this case, it's absent. We have just one boilerplate statement from the administrative law judge that says, I find her credible only to the extent that her restrictions are consistent with what I say they are. He doesn't identify any specific complaint or the specific evidence that would show that that's not accurate. I know the commissioner's argued that it's a less than clear and convincing standard. Based on Garrison as well as Burrell and Tichler, I don't think that's an issue anymore. I do note, although we're not looking at the district court decision, the district court did say that there was a lack of objective data. There's a number of problems with that type of rationale. First, pursuant to the case law that I just cited, a lack of objective data to support the degree of limitation is not sufficient as a sole basis to discredit an individual's complaints of pain. Suppose you're right about that. What do we do? Well, that will cause us to analyze whether this matter should be remanded for a computation of benefits or whether it should be remanded for further proceedings. Exactly. Okay. So the difficulty when we talk about that is there are a number of recent cases that address the issue. We have Garrison, which basically states that once we made a three-pronged test, that the matter is to be remanded for a computation of benefits unless there's serious doubt as to disability. In this case, I would say there is no serious doubt as to disability, one, for the reasons I mentioned in regard to claimant's testimony, but also both parties here agree that there was a psychological evaluation performed by one of the Commissioner's doctors who set forth restrictions and limitations that would not be compatible with full-time work. Dr. Trump? That's Dr. Trump. The Commissioner's arguing that the administrative law judge who gave great weight to this opinion accurately interpreted the opinion. But if you look, the administrative law judge just omits the physician's opinion that there are marked limitations in dealing with coworkers and supervisors. Counsel, let me interrupt with a question. The way you're phrasing it is, was there serious doubt as to disability. Is it fair to ask it this way? Is there serious doubt as to the degree of disability? That is, serious doubt whether it was in fact total, although no serious doubt that there is some disability. Okay. So we have the three cases that are presently before us that are going to define what we mean by serious doubt. It starts with Garrison, goes to Burrell, and then Trechla. If I may just pass for a moment serious doubt. I mean, is the ultimate question on that, could we say no serious doubt as to the reasonable way that we could resolve this? We're not. I mean, is it binary? Is it all or nothing? Well, I don't think the Court gets to make the judgment call as to whether an individual is disabled or not. So it's a question of crediting the evidence as true. And if we credit the evidence as true, then is there any reasonable doubt as to disability? Now, that was the Garrison holding, but I understand that it's in flux right now based upon the subsequent two cases, Burrell as well as Trechla. So I'm going to apply all three cases to your particular question. All right. And I would tell you that the answer is it should be remanded for a computation of benefits for the following reason. One, I hate the term total disability because that's not what the issue here is. The issue is whether Ms. Howard has marked limitations in the ability to deal with coworkers and supervisors and work stress. And everybody who's rendered an opinion on this particular issue has said yes, except for the one counselor. It's a treating counselor. It's not an acceptable medical source, but it is entitled to some weight. But here we have two consulting physicians as well as a treating physician who has all indicated that there are marked limitations in one particular area. So then we have to look to the vocational evidence, and that tells us that if we accept that, that the claimant is, in fact, unable to perform past work or any other work. So the reason I take issue with the term total disability is because that changes depending upon different limitations, people's age, their education, their work experience. And so individuals have a concept as to what total disability means. And what I want the Court to focus in on is whether there are marked limitations in the ability to deal with work stress, coworkers, and the public. And each and every licensed physician who's rendered an opinion on the issue has said yes, and that is supported by the treatment notes, which continually show Ms. Howard to be moody, irritable, to fly off the handle, to suffer anxiety, to also develop agoraphobia. And my answer would be the same if you asked me about the headaches. There's nothing here to contradict the nature and frequency of the headaches. What Ms. Howard testified to is supported by the neurological notes. The vocational expert was asked if we were to consider that. Would she be able to sustain work? The answer is no. There is no evidence, no opinion that they're less than what she says. So I would then answer your question in saying yes, we should remand this matter for a computation of benefits due to the lack of any conflict at all in this record and vocational expert testimony that if we were to accept those restrictions and limitations, Ms. Howard would, in fact, be unable to perform her past work or any other work. I'm going to reserve the rest of my time unless there are other questions from the Court. Roberts. I guess not. Thank you, Mr. Sleppy. Thank you. Good morning. Thank you. Katherine Bostrick on behalf of the Commissioner. This is a case about a woman who claims disability due to a mood disorder, carpal tunnel syndrome, and headaches. The ALJ looked at evidence and found that her claims were not credible. While maybe the ALJ didn't articulate his findings as clearly as Howard would have liked, his decision as a whole demonstrated that he reasonably weighed the medical and opinion evidence in her own statements regarding her disabilities and found that she was not disabled under the strict standard of the Act. What weight did he give Dr. Albury? So I think there's a couple reasons why Dr. Albury's opinion, you know, doesn't change the ultimate outcome of this case. He didn't even consider it as far as I can tell. You're right. The ALJ did not discuss Dr. Albury's opinion. And he's the treating physician. Well, let's look at when he treated her. So he treated her, stopped treating her in 2003 when he discontinued his practice. He didn't resume treating her again until December of 2007. Well, be that as it may, he's the treating doctor. He is the treating doctor. And he's got a report and the ALJ makes no reference to it. That's kind of a problem, isn't it? I mean, the ALJ didn't look at it, but I think if you look at the case law and look at the opinion, there's a lot of reasons why it just wouldn't have changed the outcome of the case if the ALJ had considered it. He did, the ALJ did believe Dr. Trump. The ALJ did believe Dr. Trump. And Dr. Trump's statement of limitations were presented to the vocational expert, who opined that if she's got what Dr. Trump says she's got, she's disabled. So Dr. Trump Am I right about that? The, you know, he did ask the vocational expert about Dr. Trump's limitations. But I think And Dr. Trump's answer was she's disabled. The vocational expert testified that. But I think what we have to look at So how do we get around that? Well, here's how we get around it. So we have to look at, you know, Dr. Trump gave different limitations. She said, you know, some moderate limitations in mental functioning, one marked limitation in Howard's ability to get along with coworkers and peers. But then if we look at, you know, the reviewing state agency psychologist, who is the only one in this case who gave a functional limitation. So Dr. Trump said, marks limitation and ability to get along with coworkers and peers. What does that mean, though? We don't, we don't know what that means. We need someone to translate that for us. So the person who did that was the reviewing state agency psychologist, Dr. Yandel. He looked at the whole record. Like Dr. Trump, he found a marked limitation and ability to get along with coworkers and peers. But then Dr. Yandel took the next step and he said, well, look, even if we consider all of these limitations as a whole, I'm going to translate this into a functional limitation. And Dr. Yandel found that Howard could perform simple to detailed job tasks with minimal social intervention, minimal social interaction, which is exactly what the ALJ found in his residual functional capacity. So I think that's the important part here, is that, you know, while some doctors gave moderate marked limitations, that doesn't really translate to a functional limitation. We don't know what that means in the workplace until someone, like a reviewing state agency psychologist who's familiar with the commissioner's regulations, who's familiar with what's required, then takes that and translates it into what does that mean in the workplace? What does that mean in terms of a functional limitation? And that psychologist found that she could do exactly what the ALJ found that she could do. Is that it? I mean, I could talk about more things if you want me to. No, no, that's okay. I think we got the idea. Thank you very much. Thank you. Could I just ask a question? Judge Schroeder has a question. Excuse me. Sure. Yeah, the psychologist never saw her. Is that correct? This is a reviewing psychologist. Yeah, a reviewing psychologist. What is the closest case that you could point us to that tells us that the ALJ can give controlling weight to someone who never saw the claimant? So the ALJ cannot give controlling weight to a reviewing state agency psychologist. However, the case law does say that when these opinions are consistent with other evidence of record, that the ALJ is entitled to consider them. I think that's in Thomas. And there are a lot of cases that say, you know, as long as it's consistent with other evidence, which it was in this case, that the ALJ can consider it. And that's really what the ALJ looks at is who gave a functional limitation, who translated these limitations into a concrete functional limitation. Okay. Thank you. Thank you, Ms. Foster. Mr. Slepian, anything else? Thank you, Your Honors. I'd like to touch on Dr. Yandell for a minute. Dr. Yandell, who's a non-treating, non-examining physician, one only identifies Dr. Trump's opinion that was in the file, doesn't look at any records. And what's interesting is Dr. Yandell initially said that there were marked limitations in dealing with coworkers and supervisors, and then at the very end gives what we call an assessment of functioning that does not include any restriction at all for dealing with coworkers or supervisors in the workplace. And every single examiner who looked at this file, Dr. Albrey, Dr. Trump, Dr. Walter, Mr. Paulin, all said she would have difficulty in this particular area. And this doctor just omitted it, and then the judge just omitted it, and nobody knows why. So to answer Judge Schroeder's question, I think we have to look at Lester v. Chater, which basically talks about how much weight we give to these non-treating, non-examining consulting physicians. And in a record like this where everyone says there are restrictions and this doctor just omits it and doesn't explain why, doesn't say what records were really reviewed, that type of opinion generally is given little to no weight at all. The other thing I'd like to point out is Counselor said that this physician was able to translate what certain restrictions mean or how they would affect the claimant in the workplace. Well, that's a vocational expert job, and we had a vocational expert there, and we read these restrictions to the vocational expert. Dr. Yandel is not a vocational expert. She can't say what jobs are available and how a marked limitation in dealing with coworkers would affect anybody. And, you know, as I was saying, this record's amply clear that she would have difficulty with that based on the psychological impairments, plus Dr. Yandel never talked about restrictions from carpal tunnel syndrome or the migraine headaches. Thank you. Thank you. Ms. Bostwick, thank you. The case is submitted.
judges: Schroeder, Silverman, Garbis